IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1:14-cr-00070 |
| | : | |
| v. | : | |
| | : | (Judge Kane) |
| DOUGLAS KELLY, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Before the Court is Defendant Douglas Kelly's motion to suppress evidence obtained during a search of 337 East Philadelphia Street in York, Pennsylvania. (Doc. No. 431.) The Court conducted a hearing on the motion on August 28, 2015. The motion has been briefed and is ripe for disposition. For the reasons that follow, the Court will deny Defendant's motion.

## I. BACKGROUND

In this motion, Defendant Douglas Kelly seeks to exclude evidence obtained from a search of Defendant's residence, 337 E. Philadelphia Street, Apartment 2, in York, Pennsylvania. (Doc. No. 431.) On March 19, 2014, a federal grand jury returned an indictment charging Defendant and co-defendants with conspiracy to distribute controlled substances.[1] (Doc. No. 1.) The next day, March 20, 2014, Magistrate Judge Carlson issued a warrant that authorized the search in question. (See Doc. No. 431-1.) The warrant application bears the signature of Scott Endy, a Special Agent with the Department of Justice Bureau of Alcohol, Tobacco, Firearms and Explosives. (Doc. No. 431-1 at 3.)

Agent Endy attached a sworn affidavit to the warrant application detailing his own credentials and detailing information from the ongoing investigation into Defendant and his co-

---

[1] A second superseding indictment issued on September 17, 2014. (Doc. No. 78.)

1

defendants for firearms and controlled substances crimes. (Doc. No. 431-1 at 3-30.) The affidavit, which spans 27 pages and 99 numbered paragraphs, purports to establish the bases for probable cause to search Defendant's residence, three motor vehicles, and four other physical locations. (Doc. No. 431-1 at 6-33.)

Numbered paragraph 13 summarizes Agent Endy's basis for probable cause to search the residence: (1) "multiple cooperating sources . . . identified" Defendant as a member of the Bloods street gang "involved in" controlled substance trafficking and gun violence; (2) confidential sources confirmed that Defendant resided (at the time of the warrant) at 337 E. Philadelphia Street, Apartment 2, in York, Pennsylvania; (3) a confidential informant conducted a controlled purchase of crack cocaine from Defendant in September 2013, and handed Defendant payment for the drugs "at this location" in the presence of co-defendants; (4) vehicles registered to Defendant identified 337 E. Philadelphia Street, Apartment 2, as Defendant's residence; (5) on February 2, 2014, police conducted a controlled purchase of drugs from a known drug trafficker who then entered the apartment; (6) Kelly was given permission to use a co-defendant's vehicle known to be used in trafficking, and that vehicle frequented the apartment; (7) on February 4 or 5, 2014, a confidential informant went to the apartment attempting to buy cocaine from Defendant, but Defendant responded that he did not have any and was making a trip to Atlantic City, New Jersey to obtain more; (8) a confidential informant identified co-defendant Hernandez as the source of large amounts of cocaine to Defendant and others; and (9) on March 4, 2014, Defendant, who was then under surveillance, left the apartment to sell cocaine to an informant and then immediately returned to the apartment. (Doc. Nos. 431-1 at 7 ¶ 13; 502-1 at 10 ¶ 13.)

The information summarized in paragraph thirteen is explained in more detail elsewhere in the affidavit. For example, paragraphs 18 through 22 recount an interview that Special Agent Brian LePrell conducted with "Confidential Informant #9." (Doc. No. 431-1 at 9-10 ¶¶ 18-22.) This informant is the individual who attempted to purchase crack cocaine from Defendant on February 4 or 5, 2014. (Id. at 10 ¶ 21.) Confidential informant #17, a self-professed member of the Southside Gang, stated that Defendant is "currently a source of crack cocaine to him/her and s/he purchased one ounce quantities of crack cocaine from [Defendant] on two occasions [and Defendant] charged him/her $1,100 per ounce." (Id. at 12 ¶ 30.)

In addition, the affidavit contains a chronology of events in the alleged conspiracy that support probable cause for the search warrants Endy sought, including the one for Defendant's residence. One of the earliest events detailed occurred on February 21, 2004, when York City Police conducted a controlled purchase of cocaine. (Doc. No. 431-1 at 16 ¶ 51.) In that incident, Defendant and a female passenger were sitting in a car when a confidential informant entered the car and, according to the affidavit, "purchased 0.16 grams of cocaine from KELLY." (Id.) Defendant was later convicted of possession with intent to deliver and delivery of cocaine for the incident. (Id.) In another of the several references to Defendant in the balance of the affidavit, Agent Endy describes a controlled purchase on September 24, 2013. (Id. at 18 ¶ 57.) On that date, a confidential informant purchased suspected crack cocaine from Defendant, and later "made a controlled delivery of $150.00 to Douglas KELLY at 337 E. Philadelphia Street, York, Pennsylvania." (Id.)

Magistrate Judge Carlson issued a search warrant for Defendant's residence on March 20, 2014, and law enforcement conducted a search on March 21, 2014. (Doc. No. 432 at 2.)

"During the search, 7 cell phones and a camera containing other data, a digital scale, photographs, documents, and cash were seized." (Id.) Defendant now seeks to suppress that evidence.

At the August 28, 2015 hearing, Agent Endy testified to the lengthy and extensive investigation that preceded his application for a search warrant and explained that <u>all</u> information known to him could not practically be included. As to the representation that a drug transaction occurred, Agent Endy persuasively rejected the suggestion that his purpose was to confuse the magistrate into believing that the transaction occurred inside. Agent Endy testified to the basis of knowledge for a number of the informants, including confidential source 17, who may have been motivated in making his statements by the threatened prosecution of his girlfriend. Defense counsel asked Agent Endy if any informant had ever been inside the house or stated that contraband was inside the house, and Agent Endy replied that he was not aware of any informant making such a representation.

## II. DISCUSSION

### A. Standards governing motions to suppress

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. When a search warrant authorized a search, the proponent of the motion to suppress evidence from the search bears the burden of establishing that his or her Fourth Amendment rights were violated. United States v. Correa, 653 F.3d 187, 190 (3d Cir. 2011) (citing Rakas v. Illinois, 439 U.S. 128, 132 n.1 (1978)); see United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995). The challenger must make a showing by a preponderance of the evidence. United States v. Matlock, 415 U.S. 164, 178 n.14 (1974). At a hearing on a motion to

suppress, "the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." United States v. Richardson, 501 F. Supp. 2d 724, 734 (W.D. Pa. 2007) (citations omitted).

B. **Probable cause**

Defendant argues that Endy's affidavit of probable cause was deficient, so the Court should suppress the evidence obtained during the search. (Doc. No. 432 at 3.) Specifically, Defendant argues that the affidavit "does not set forth a factual basis for crediting any of the . . . confidential informants," and that none of the facts alleged indicates that drugs were actually stored inside the apartment or that any informant had ever been inside the apartment. (Id. at 4-5.) In addition, Defendant argues that the confidential informants' information was not sufficiently corroborated, and that the controlled purchases detailed in the affidavit were stale. (Id. at 5-7.) The Government argues that this Court's review of Magistrate Judge Carlson's finding of probable cause is deferential, and that in any case, under a totality of the circumstances analysis, the basis for probable cause is evident from the face of Agent Endy's affidavit. (Doc. No. 502 at 18-19.)

Search warrants must be supported by probable cause. Probable cause for the issuance of a warrant is found where, under the totality of the circumstances, "there is a fair probability that . . . evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S 213, 238 (1983). "[P]robable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the fruits of his crime." United States v. Hodge, 246 F.3d

301, 305 (3d Cir. 2001) (internal citations and quotations omitted). Upon a court challenge to a probable cause determination, courts apply a deferential standard of review. United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents, 307 F.3d 137, 146 (3d Cir. 2002). This means that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Id. at 147 (quoting United States v. Jones, 994 F.2d 1051, 1054 (3d Cir. 1993)). The question before the Court is not whether probable cause actually existed, but instead whether Magistrate Judge Carlson possessed "a substantial basis for finding probable cause." Id. (internal quotations omitted).

As the Government points out, "[w]hen the crime under investigation is drug distribution, a magistrate may find probable cause to search the target's residence even without direct evidence that contraband will be found there." United States v. Stearn, 597 F.3d 540, 558 (3d Cir. 2010). "[I]t is a reasonable inference to conclude that drug dealers often store evidence of drug crimes in their residences." Id. (quoting United States v. Burton, 288 F.3d 91, 104 (3d Cir. 2002)). In order for that inference to apply, there must be evidence supporting "three preliminary premises: (1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's drug activities." Burton, 288 F.3d at 104.

In the present case, the Court finds that probable cause is evident from Agent Endy's affidavit. The three Burton preliminary premises are supported by the facts Agent Endy submitted to Magistrate Judge Carlson. First, Defendant was a previously convicted drug dealer who made controlled sales of crack cocaine as recently as sixteen days before Magistrate Judge Carlson issued the search warrant. (See e.g., Doc. No. 502-1 at 29 ¶ 88.) Surveillance teams

6

from police corroborated the informant's information regarding the controlled sale of 1/8 of an ounce of crack cocaine. (Id.) In addition, Defendant departed from the residence in question and then returned to it after the sale. (Id.) Second, there is little question that the 337 E. Philadelphia Street apartment was Defendant's residence: it was listed as his residence with the Pennsylvania Department of Transportation (Doc. No. 502-1 at 21 ¶ 57), at least one confidential informant corroborated that fact (id. at 10 ¶ 13), and Defendant has not argued to the contrary. Finally, given the consistent presence of vehicles known to be used for drug distribution, the consistent presence of known drug dealers, and Defendant's acceptance of payment for drugs directly outside the apartment, the Court finds that there is evidence to support the premise that "the home contain[ed] contraband linking it" to the alleged conspiracy. See Burton, 288 F.3d at 104.

Even without relying on the inference described in Stearn, the Court finds that probable cause separately existed to search Defendant's residence. This conclusion comes from largely the same facts discussed directly above: Defendant was credibly reported to be an active drug dealer (and at the date of the search warrant, an indicted drug conspirator), known by law enforcement to use the 337 E. Philadelphia Street apartment as a residence and as a base of operations for the sale of controlled substances. Nothing revealed at the hearing on this motion has persuaded the Court otherwise. The Court finds that Magistrate Judge Carlson had a substantial basis for finding that there was a fair probability that evidence of the crimes for which Defendant has been indicted would be found at the location, so the warrant was properly issued. See Gates, 462 U.S. at 238.

**C. The good faith exception**[2]

In addition, were the Court to find probable cause lacking, evidence from the search would be suppressed only if the Court also found that the "good faith exception" to the exclusionary rule did not apply. Defendant argues that, due to alleged misrepresentations in Agent Endy's affidavit, the good faith exception should not apply here.

Where a warrant is defective or lacks probable cause, evidence from the search will not be suppressed when the officers that executed the search warrant acted in "objectively reasonable reliance" on the lawfulness of the warrant. United States v. Leon, 468 U.S. 897, 925 (1984). This exception to the exclusionary rule applies unless a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. United States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999). As Defendant points out, courts have identified four situations where reliance on a signed search warrant would not be "in good faith:" (1) when "the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth;"[3] (2) "when the issuing magistrate wholly abandons [his or her] judicial role;" (3) "when the affidavit in support of the warrant is so lacking in the indicia of probable cause as to render official belief in its existence unreasonable;" and (4) "when the warrant is so facially deficient that the

---

[2] Given the Court's finding regarding probable cause, the Court considers the good faith exception only in the alternative.

[3] The Court observes that much of Defendant's arguments are addressed to this exception, rooted in Franks v. Delaware, 438 U.S. 154 (1978). See Leon, 468 U.S. at 914, 923. To avail himself or herself of this exception, a defendant must show "[1] that bad faith or reckless disregard existed on the part of the affiant, and [2] that there would have been no probable cause but for the incorrect statement." United States v. Shields, 458 F.3d 269, 276 (3d Cir. 2006).

8

executing officer could not reasonably believe it was valid." (Doc. No. 432 at 9) (quoting Leon, 468 U.S. at 922-23). In those circumstances, a reasonable officer should not conduct a search, even where a facially valid search warrant authorizes one, and evidence uncovered in such a search will be suppressed. See id.

Although Defendant does not precisely elucidate which of the above four situations he believes apply to these facts, he does argue that two particular "misrepresentations" prevent the good faith exception from applying here. (Doc. No. 432 at 11-12.) In particular, Defendant claims that paragraph 57 of Agent Endy's affidavit is misleading because it states that the "informant made a controlled delivery of $150.00 to Douglas KELLY at 337 E. Philadelphia Street, York, Pennsylvania." (Id. at 11) (emphasis added). Defendant argues that this language suggests that the payment occurred inside the residence, and not on the street directly outside the residence as the police reports suggest. (Id.) In addition, Defendant argues that paragraph 51, regarding the 2004 controlled buy and subsequent conviction, is misleading because Agent Endy represents that the informant "purchased 0.16 grams of cocaine from KELLY," while the police reports are equivocal as to whether Defendant himself sold the drugs to the informant, or whether the seller was the female passenger of the car. (Id. at 11-12.)

The Court is not persuaded by Defendant's arguments. Even accepting Defendant's position that those statements were misleading, Defendant has merely highlighted two subtle suggestions in the considerable array of facts marshaled in support of probable cause, and they do not compel a rejection of the good faith exception. Indeed, the plain meaning of the line from paragraph 57 – that payment occurred at the apartment – does not unequivocally convey that the informant was inside the apartment rather than on the sidewalk in front of it. And such a fact

9

could only arguably be said to have misled Magistrate Judge Carlson, and it would be even more attenuated to suggest that the language would make the police officers' reliance on the search warrant objectively unreasonable. As to paragraph 51 regarding the 2004 controlled purchase, the Government correctly points out that any ambiguity in who actually handed the drugs to the informant shrinks in comparison to the paragraph's ultimate import: that Defendant was convicted of delivering drugs based on that incident.

In sum, the Court finds that Magistrate Judge Carlson had a sufficient basis to find that probable cause existed for the search of Defendant's residence. In the alternative, even if no sufficient basis existed, the Court finds that the officers would be entitled to rely in good faith on the search warrant, so the evidence would still not be excluded.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion to suppress evidence from a search of 337 E. Philadelphia Street, Apartment 2. An order consistent with this memorandum follows.