## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOUGLAS KELLY,** | : | |
| **Petitioner** | : | **No. 1:14-cr-00070-2** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent** | : | |

### MEMORANDUM

Before the Court is Petitioner Douglas Kelly ("Petitioner")'s motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 1759.) For the following reasons, the Court will deny the motion.

## I.    BACKGROUND

In 2014, a federal grand jury returned a superseding indictment charging Petitioner and twenty codefendants (collectively, "Codefendants," and with Petitioner, "Defendants") with three counts: racketeering conspiracy ("RICO") (Count I), drug-trafficking conspiracy (Count II), and drug trafficking (Count III).[1] (Doc. No. 78.) The charges stemmed from Defendants' association with a violent street gang—the Southside gang, which is affiliated with the Bloods, a national street gang—to perpetrate drug trafficking and other violent acts. (Id.) The conspiracy took place over a twelve-year period and involved deadly gang violence. (Id.) Nine defendants entered pleas of guilty—eight to one count of RICO, and one to both RICO and drug-related charges. (Doc. Nos. 1380, 1493, 1542, 1550–51, 1560, 1575, 1585.) Twelve, including Petitioner, proceeded to a joint jury trial. (Doc. Nos. 974–1027.) The jury found all twelve guilty, in late 2015, of one or more charges. (Doc. Nos. 911–34.)

---

[1] Four (4) Codefendants were also charged with firearm-related offenses. (Doc. No. 78.)

As to Petitioner, the jury found him guilty of RICO (Count I) and the two drug counts (Counts II–III), which involved 5 kilograms or more of cocaine and 280 grams and more of crack cocaine, heroin, and marijuana.  (Doc. No. 913.)  The presentence investigation report ("PSR") assigned a base offense level of 43 for the RICO conviction (Count I) based on underlying racketeering activity for which Petitioner was deemed responsible pursuant to U.S.S.G. § 2E1.1(a)(1)–(2) (providing for a base offense level of 19 "unless the offense level applicable to the underlying racketeering activity is greater").  (PSR ¶ 219.)  Petitioner's combined adjusted offense level was 52 (id. ¶ 279), but the offense level is treated as a level 43 (id. ¶ 282).  The PSR indicated that the RICO conviction carried a statutory maximum of life imprisonment pursuant to 18 U.S.C. § 1963(a).  (Id. ¶ 310.)  The guideline range was also calculated to be life imprisonment based on a total offense level of 43 and a criminal history category of VI.  (Id. ¶ 311.)

Regarding the underlying racketeering activity that resulted in the higher statutory maximum and guideline range, the PSR stated as follows:

> The instant RICO offense encompasses five separate underlying racketeering categories, and 109 racketeering activities (RA) as referenced in The Offense Conduct section of this report.  A defendant need not have been charged with the "underlying racketeering activity," and need not have been personally involved in the activity as long as the conduct was reasonably foreseeable to him in furtherance of the RICO enterprise.  Southside was known to use threats and violence, and had access to firearms to protect their territory.  Since this activity was known to all those involved, all of underlying activity noted by an 'RA' was reasonably foreseeable to the participants beginning when they personally joined Southside.

(Id. ¶ 211.)

The PSR enumerated the relevant racketeering activities, e.g., first-degree murder, attempted first-degree murder, robbery, kidnapping, narcotics possession/distribution.  (Id. ¶¶

2

212–18.)  The Court adopted the PSR with one exception: the Court applied a four-level increase

under U.S.S.G. § 3B1.5(1) and 2(B) due to Petitioner's use of body armor.  (Doc. No. 1401 at 1.)

The Court sentenced Petitioner to concurrent terms of life imprisonment on each count of which

he was found guilty.  (Doc. No. 1367 at 3.)

Petitioner and nine Codefendants who proceeded to trial appealed their convictions and

sentences to the United States Court of Appeals for the Third Circuit.  See United States v.

Williams, 974 F.3d 320, 338 (3d Cir. 2020).  The Third Circuit grouped their claims on appeal

into five categories: (1) Sixth Amendment challenges to this Court's closure of the courtroom to

the public during voir dire; (2) challenges to the Court's in camera disposition of a challenge

asserted under Batson v. Kentucky, 476 U.S. 79 (1986); (3) evidentiary challenges relating to

motions to suppress evidence recovered from their residences under search warrants; (4)

challenges to the sufficiency of evidence at trial; and (5) challenges to their sentences based on

alleged procedural defects.  See id. at 335–36.[2]  Petitioner, along with Defendants Rice and

Eatmon, challenged this Court's drug-quantity attribution and body-armor enhancement based on

the sentencing guidelines.  See id. at 378–80.  As to these challenges, the Third Circuit found

Petitioner's drug attribution finding was not clear error,[3] and that there is a "spatial and temporal

---

[2]  Petitioner specifically asserted five procedural defects, claiming that: (1) this Court erred in
applying the two-level enhancement for possession of "a dangerous weapon"; (2) this Court
erred in applying a four-level increase for being "an organizer or leader"; (3) this Court erred in
calculating his criminal history score; (4) this Court's failure to consider his objection to the two-
level enhancement based on use-of-violence; and (5) this Court's imposition of a life sentence on
Petitioner was substantively unreasonable.  See Williams, 974 F.3d at 375–77.  The Third Circuit
found all of Petitioner's arguments to be meritless and, as to the substantive reasonableness of
Petitioner's sentence, stated that because Petitioner was a leader in a decade-long conspiracy, a
"reasonable jurist easily could have imposed the life sentence that [this Court] did."  See
Williams, 974 F.3d at 375–77.

[3]  The Third Circuit observed that, "[g]iven this longitudinal evidence of [Petitioner]'s twelve-
year participation in the highest levels of the conspiracy, the indications of persistent drug-

3

nexus between [Petitioner]'s use of the body armor and the commission of the conspiracy offense," and thus, "[a]pplication of the four-level enhancement was not clear error." See id. at 380.

Seven Defendants, including Petitioner, challenged this Court's assessment of a fine to reimburse the City of York for the overtime wages paid to York police officers who testified at trial, and on appeal, the Government conceded the issue. See id. at 380. While affirming all ten Defendants' judgments of conviction, and based on the Government's concession, the Third Circuit partially vacated the judgments of sentence of eight Defendants, which included Petitioner, "as to the assessment of police overtime costs," vacated the judgment of sentence of one of those eight Defendants—Hernandez—in full to permit him an opportunity to make a statement or present mitigation evidence in connection with his sentencing proceedings, and vacated another of the same group of Defendants—Schueg—as to the assessment of restitution, fines, and costs. See id. at 375, 377, 380; see also (Doc. Nos. 1637, 1637-1, 1638, 1638-1, 1639, 1639-1, 1640, 1640-1, 1641, 1641-1, 1642, 1642-1, 1643, 1643-1, 1644, 1644-1, 1645, 1645-1, 1646, 1646-1).

In October 2021, this Court issued orders effectuating the vacatur of five Defendants' judgments of sentence as to the assessment of police overtime costs and entered corresponding amended judgments. (Doc. Nos. 1684–85 (Cruz), 1687–88 (Petitioner), 1690–91 (Villega), 1693–94 (Atkinson), 1696–97 (Sistrunk).) In December 2021, following sentencing hearings, the Court resentenced Defendants Hernandez and Schueg and issued amended orders regarding

---

dealing activity, and the testimony regarding the amounts involved, we cannot say the District Court clearly erred in its attribution." See Williams, 974 F.3d at 379.

their judgments of sentence.  (Doc. Nos. 1705 & 1709 (Schueg), 1711 & 1712 (Hernandez).)[4]

Petitioner filed his § 2255 motion in October 2022 with a supporting addendum.  (Doc.

No. 1759.)  The Government filed a brief in opposition in December 2022 (Doc. No. 1818), and

Petitioner filed a reply brief in February 2023 (Doc. No. 1830).[5]  Having been fully briefed,

Petitioner's § 2255 motion is ripe for disposition.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the

sentencing court vacate, set aside, or correct his sentence on the basis "that the sentence was

imposed in violation of the Constitution or laws of the United States, or that the [C]ourt was

without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum

authorized by law, or is otherwise subject to collateral attack."  See 28 U.S.C. § 2255(a).

However, § 2255 does not afford a remedy for all errors that may have been made at trial or

during sentencing.  See United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing

United States v. Addonizio, 442 U.S. 178, 185 (1979)).  Rather, § 2255 is implicated only when

the alleged error raises "a fundamental defect which inherently results in a complete miscarriage

of justice."  See Addonizio, 442 U.S. at 185.  Under the Antiterrorism and Effective Death

---

[4]  An amended judgment was not entered as to Defendant Eatmon, whose judgment of sentence was ordered vacated as to the police overtime costs, because his original judgment did not include such costs.  See (Doc. No. 1504).

[5]  Upon receipt of Petitioner's § 2255 motion, the Court issued a Miller notice on October 5, 2022, directing Petitioner to complete and file the enclosed Notice of Election form within forty-five (45) days from the date of the Order.  (Doc. No. 1762.)  The Court stated that failure to comply with the Miller notice would result in the Court ruling on the motion as captioned.  (Id. at 3–4.)  Petitioner did not file a Notice of Election form within the forty-five (45) days.  On December 5, 2022, the Court issued an Order directing the Clerk of Court to serve a copy of Petitioner's motion upon the United States Attorney for the Middle District of Pennsylvania and directing the Government to respond to the allegations in Petitioner's motion within twenty-one (21) days of the date of the Order.  (Doc. No. 1809 at 1.)

Penalty Act ("AEDPA"), a petitioner has one year from the time his conviction becomes final to file a § 2255 motion.  See 28 U.S.C. § 2244.

## III.    DISCUSSION

In his motion, Petitioner advances fourteen (14) grounds for § 2255 relief:

(1)    Trial Counsel was ineffective because he "gave Petitioner Kelly erroneous advice about the sentencing exposure being not more than 30 years,"

(2)    Trial Counsel was ineffective because he "failed to challenge at the sentencing proceeding that the indictment did not put Petitioner Kelly on notice with special sentencing factors that would permit the government to move for sentencing enhancements if Petitioner Kelly was convicted under RICO Conspiracy";

(3)    Trial Counsel was ineffective because he "failed to object to Petitioner's classification as a Sentencing-Guideline-Career Offender based on a non-qualifying Pennsylvania Commonwealth prior sentence, since the prior sentence encompassed conduct that was part of the same course of conduct as his current conviction";

(4)    Trial Counsel was ineffective because he "failed to raise on direct appeal that the district court grossly abused its discretion when it allowed into evidence Government's Exhibit 136.1, Petitioner's cellular phone, even though there was no chain of custody established by trial testimony";

(5)    Trial Counsel was ineffective because he did not "hire or move the [C]ourt to appoint an independent digital forensic expert to examine [P]etitioner Kelly's cell[]phone";

(6)    Trial Counsel was ineffective because he "failed to demand production of the digital forensic expert's 'generate report'" regarding Petitioner's cell phone;

(7)    Trial Counsel was ineffective because he "failed challenge the insufficiency of the evidence for the Christen Latham murder in a Rule 29 motion, and if necessary, on direct appeal";

(8)    Trial Counsel was ineffective because he "failed to move for a latent fingerprint expert and a DNA expert to examine the four .45 caliber spent shell casings and two .45 caliber cartridges collected at the crime scene of Christ[ian] Latham murder";

(9)    Trial Counsel was ineffective because he "failed to support his legal argument with documentation to prove that Petitioner Kelly's 1993 New York State Court adjudication was a non-qualifying juvenile adjudication for the United States

Sentencing Guidelines Career Offender Classification";

(10)    Trial Counsel was ineffective because he "failed to have Darrell Williams' 9mm firearm examined by a firearm expert to ascertain if the firearm was sabotaged by Williams to cause the ejector mechanism to purposely jam with a stuck spent shell casing";

(11)    Trial Counsel was ineffective because he "failed to interview or send a private investigator to interview Cheirha Rankins and Christine Media who observed a man with a firearm at the crime scene'";

(12)    Trial Counsel was ineffective because he "failed to locate and interview crucial witnesses who were positioned in close proximity to the area where Christen Latham died from a gunshot wound to his chest";

(13)    The Court incorrectly sentenced him and Trial Counsel failed "to have the Third Circuit Rule on his adoption of the Rowe argument which codefendant Mark Hernandez raised on direct appeal"; and

(14)    The Court "enhanced Petitioner Kelly's base offense by four levels finding he was a leader or organizer of criminal activity that involved five or more participants which was not supported by the trial record."

See (Doc. No. 1759-1). The Government discusses Petitioner's motion as presenting seven different issues: (1) plea negotiations; (2) notice of the sentencing factors; (3) career offender designation; (4) chain of custody ruling; (5) sufficiency of the Christen Latham[6] murder evidence; (6) trial counsel's investigation; and (7) leadership guideline assessment. (Doc. No. 1818.) Accordingly, for ease of discussion, the Court groups Petitioner's claims into seven issues as discussed infra.

As his claims reflect, with the exception of his thirteenth and fourteenth claims challenging the sentence imposed by the Court, Petitioner seeks § 2255 relief based on the overarching assertion that the attorney who represented him ("Trial Counsel") provided

---

[6]  In its brief, the Government refers to him as "Christian Latham," (Doc. No. 1818) but upon review of the trial transcripts and news coverage related with his murder, the proper spelling appears to be "Christen Latham."

constitutionally deficient representation in violation of the Sixth Amendment. A collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687–88, 694 (1984). See George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001). The first Strickland prong requires Petitioner to "establish first that counsel's performance was deficient." See Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). Petitioner must show that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. See id. To do so, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. See id. (citing Strickland, 466 U.S. at 688). There is "a 'strong presumption' that counsel's performance was reasonable." See id.

Under the second Strickland prong, Petitioner "must demonstrate that he was prejudiced by counsel's errors." See id. Prejudice in this context means "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See id. (quoting Strickland, 466 U.S. at 694). Reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." See id. (quoting Strickland, 466 U.S. at 694).

Notably, Petitioner must make an adequate showing with respect to both prongs of the Strickland test in order to be entitled to relief. See Strickland, 466 U.S. at 686. A failure to make the required showing on either prong precludes a finding in Petitioner's favor. See id. at 700. "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible," courts should address the prejudice prong first when it is dispositive of a petitioner's claims. See United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002). Each ground asserted in Petitioner's

motion is discussed in turn below.

### A.    Ground One: Trial Counsel's Failure to Properly Advise During Plea Negotiations

Ground One of Petitioner's § 2255 motion asserts that Trial Counsel was ineffective for giving him "erroneous advice about the sentencing exposure being not more than 30 years; as a result, Petitioner Kelly rejected the [G]overnment's plea offer of 0–20 years, and he proceeded to trial where he was found guilty on all counts and later sentenced to multiple life terms of imprisonment."  (Doc. No. 1759-1 at 1.)  Petitioner claims that had he "been correctly informed of his exposure at trial to multiple life sentences, he would have without hesitation quickly accepted the [G]overnment's zero to 20 year plea offer."  (Id. at 2.)

In response, the Government represents that, "based upon [its] communications with [T]rial [C]ounsel during plea discussions," Petitioner was informed by Trial Counsel that he faced a statutory maximum punishment of life imprisonment.  (Doc. No. 1818 at 11 n.2.)  In addition, the Government notes that Magistrate Judge Carlson informed Petitioner of his statutory maximum punishment during arraignment.  (Id.)  The Government further argues that Petitioner cannot establish that he would have accepted the plea if so advised.  (Id. at 12.)

Having considered Petitioner's arguments, the briefing of the parties, and the record of these criminal proceedings, the Court concludes that Petitioner has failed to establish the second prong of Strickland and Ground One of his § 2255 petition is unavailing for that reason alone. See Gaines v. Superintendent Benner Twp. SCI, 33 F.4th 705, 712 (3d Cir. 2022) (noting that if a § 2255 movant "makes an inadequate showing as to one of the[] [Strickland prongs], then [courts] do not need to examine the other").  The Court need not address the first Strickland prong.

Petitioner's claim in Ground One falls within the scope of Lafler v. Cooper, 132 S. Ct.

9

1376 (2012), and is often referred to as a "Lafler claim." To establish a Lafler claim, Petitioner must demonstrate that (1) "he would have accepted the plea offer if he had been aware of his sentencing exposure"; (2) "his guilty plea would have been accepted by the court"; and (3) "the conviction and sentence he would have received under the plea offer would have been less severe than those resulting from the trial." See id. at 1385. The first prong of the Lafler claim is essentially a more specific articulation of the second Strickland prong, which tasks the Court with deciding whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Jermyn, 266 F.3d at 282 (quoting Strickland, 466 U.S. at 694).

The record reflects that Petitioner was not prejudiced by Trial Counsel's alleged failure to properly advise him of the potential sentence he faced because Petitioner was made aware of his potential sentencing exposure at his arraignments before Magistrate Judge Carlson on the initial and superseding indictments (Doc. Nos. 15–20, 57, 71–72), and his arraignment before Magistrate Judge Schwab on the second superseding indictment (Doc. Nos. 224–25). See United States v. Bard, No. 12-cr-000181, 2018 WL 6044688, at *4 (M.D. Pa. Nov. 19, 2018) (finding that the petitioner was not prejudiced by trial counsel's alleged failure to properly advise him of his potential sentence when the petitioner was "made aware of his potential sentence at least as early as his arraignment"); United States v. Barndt, No. 14-cv-00985, 2014 WL 4187983, at *3 (W.D. Pa. Aug. 22, 2014) (rejecting an ineffective assistance of counsel claim because "[e]ven if counsel never specifically informed [the petitioner] of the possibility of a life sentence (i.e. the statutory maximum sentence) . . . [the petitioner] was informed of that possibility at his arraignment on both the original and superseding indictments").

Accordingly, Petitioner has failed to satisfy the first Lafler prong, i.e., that he would have

accepted the plea offer if he had been aware of his sentencing guidelines exposure.  As noted
supra, Petitioner's failure to satisfy Lafler's first prong means that he fails to establish prejudice
under Strickland's second prong.  The Court will therefore deny Petitioner's § 2255 motion as to
Ground One.

     **B.**     **Ground Two: Trial Counsel's Failure to Challenge Special Sentencing
          Factors**

     Ground Two of Petitioner's § 2255 motion argues that Trial Counsel was ineffective for
failing to challenge "that the indictment did not put Petitioner Kelly on notice with special
sentencing factors that would permit the government to move for sentencing enhancements if
Petitioner Kelly was convicted under RICO Conspiracy charged in Count One of the
indictment."  (Doc. No. 1759-1 at 3.)  He maintains that a notice of special sentencing factors for
Defendant Richard Nolden was included in the indictment, but no notice of special sentencing
factors for Petitioner was listed in the original indictment or superseding indictment as to his
RICO count.  (Id. at 3–4.)  Petitioner claims that this is in violation of Apprendi v. New Jersey,
530 U.S. 466 (2000).  (Id.)  In response, the Government argues that the facts that increased the
statutory maximum were alleged in the superseding indictment and thus Petitioner's Trial
Counsel was not ineffective.  (Doc. No. 1818 at 12–13.)

     Having considered Petitioner's arguments, the briefing of the parties, and the record of
these criminal proceedings, the Court concludes that Petitioner has failed to establish Strickland
prejudice and Ground Two of his § 2255 petition is unavailing for that reason alone.  The Court
need not address the first Strickland prong.  See Gaines, 33 F.4th at 712 (noting that if a § 2255
movant "makes an inadequate showing as to one of the[] [Strickland prongs], then [courts] do

not need to examine the other").[7]  In <u>Alleyne v. United States</u>, 570 U.S. 99 (2013), the Supreme

Court of the United States, relying on <u>Apprendi</u>, held that "any fact that increases the mandatory

minimum is an 'element' that must be submitted to the jury," and found beyond a reasonable

doubt.  <u>See</u> <u>Alleyne</u>, 570 U.S at 103, 108.  Under <u>Apprendi</u>, the Sixth Amendment right to a jury

trial requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty

for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved

beyond a reasonable doubt."  <u>See</u> <u>Apprendi</u>, 530 U.S. at 490.

      As properly noted by the Government (Doc. No. 1818 at 12–13), Petitioner was put on

notice that Defendants distributed 280 grams and more of cocaine base (crack cocaine) and five

kilograms and more of cocaine in the superseding indictment (Doc. No. 78 at 11–12 ¶¶ 18, 21).

At sentencing, the Court found that the guideline range in Petitioner's case was calculated based

on the drug offenses.  (Doc. No. 1400 at 2, Tr. 2:16–21.)  A review of the drug offense statutes,

21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(A), reveals that the maximum term of imprisonment

for such offenses was life.  <u>See</u> 21 U.S.C. §§ 841(b)(1)(A), 960(b)(1).  Further, the drug

quantities alleged in the superseding indictment were proven beyond a reasonable doubt.[8]  <u>See,</u>

<u>e.g.</u>, <u>Alleyne</u>, 570 U.S. at 111–16 & n.1; <u>Apprendi</u>, 530 U.S. at 490.   Accordingly, Petitioner

cannot establish any prejudice because the statutory maximum on the drug charges was life

imprisonment.  The Court will therefore deny Petitioner's § 2255 motion as to Ground Two.

---

[7]  Although the Court does not need to assess the performance of Trial Counsel, the Court acknowledges that, at sentencing, the Court noted "the numerous objections that were filed on [Petitioner]'s behalf," and that "[Trial Counsel] may have broken the record for objections with [Trial Counsel's] 100-page submission."  <u>See</u> (Doc. No. 1400 at 2, Tr. 2:12–15).

[8]  This fact is also noted in Petitioner's PSR.  (PSR ¶ 310.)

C.    **Grounds Three and Nine: Trial Counsel's Failure to Challenge Career Offender Designation**

Grounds Three and Nine of Petitioner's § 2255 motion argue that Trial Counsel was ineffective by failing to object to Petitioner's classification as a career offender "based on a non-qualifying Pennsylvania Commonwealth prior sentence," (Doc. No. 1759-1 at 8) and failing to support his legal argument with documentation that Petitioner's "1993 New York State Court adjudication was a non-qualifying juvenile adjudication," (id. at 32).  As to Ground Three, Petitioner claims that the prior sentence "encompassed conduct that was part of the same course of conduct as his current conviction," and thus was invalid for consideration during sentencing. (Id. at 8.)  He posits that "it must be considered at best as only relevant conduct because it was conduct in furtherance" of the RICO count.  (Id. at 9.)  As to Ground Nine, Petitioner contends that Trial Counsel should have subpoenaed documentation from New York to prove that his 1993 conviction was a juvenile adjudication.  (Id. at 33–34.)

The Government contends that even if Petitioner was not a career offender, he would still have the same guideline range because his offense level would remain at 43.  (Doc. No. 1818 at 14.)  Further, the Government claims that Petitioner cannot establish that his career offender designation affected the sentence imposed by this Court and that the Third Circuit affirmed Petitioner's sentence "as substantively reasonable."  See (id.) (citing Williams, 974 F.3d at 377). The Government also states that Petitioner's allegation that his Trial Counsel failed to investigate New York State Court records relating to his juvenile offense is merely speculative.  (Id. at 21–22.)

Having considered Petitioner's arguments, the briefing of the parties, and the record of these criminal proceedings, the Court concludes that Petitioner has failed to establish Strickland prejudice and Grounds Three and Nine of his § 2255 petition are unavailing for that reason

13

alone.  The Court need not address the first <u>Strickland</u> prong.  <u>See</u> <u>Gaines</u>, 33 F.4th at 712

(noting that if a § 2255 movant "makes an inadequate showing as to one of the[] [<u>Strickland</u>

prongs], then [courts] do not need to examine the other").  As noted by the Government,

Grounds Three and Nine can "most readily be disposed of by examining prejudice."  (Doc. No.

1818 at 14.)  As to Ground Three, because Petitioner's offense level would have been the same,

even if he was not classified as a career offender, his guideline calculation range would still be

life imprisonment.  Further, as to Petitioner's argument under Ground Nine that his Trial Counsel

should have subpoenaed information regarding the juvenile offense, Petitioner offers no proof as

to what such an investigation by Trial Counsel would have revealed.  Accordingly, Petitioner

cannot demonstrate that he was prejudiced by Trial Counsel's failure to object to his career

offender designation or failure to subpoena information.  The Court will deny Petitioner's § 2255

motion as to Grounds Three and Nine.

> **D.     Grounds Four, Five, and Six: Trial and Appellate Counsel's Failure to Challenge Chain of Custody of Petitioner's Cell Phone**

Grounds Four, Five, and Six of Petitioner's § 2255 motion concern the chain of custody

of Petitioner's cell phone and its contents, specifically photographs, referenced as Government

Exhibits 136.1 and 136.5 during trial.[9]  Upon careful consideration of Petitioner's arguments, the

parties' briefing, the record, and relevant authority, the Court concludes that Petitioner has failed

to establish ineffective assistance of counsel as to Grounds Four, Five, and Six.  The Court first

addresses Ground Four before addressing Grounds Five and Six together.

As to Ground Four, Petitioner fails to establish <u>Strickland</u>'s first prong as to his claim that

---

[9]  The phone was marked as Exhibit 136.1 and the data/photos were referred to as Exhibits
136.5.1, 136.5.2, 136.5.3, and so on.  <u>See</u> (Doc. No. 997 at 47–52, Tr. 4401:22–4406:16).

his Trial Counsel, who also acted as his Appellate Counsel, was ineffective in failing to "raise on direct appeal that the district court grossly abused its discretion" in allowing Petitioner's cell phone into evidence at trial "even though there was no chain of custody established by trial testimony." (Doc. No. 1759-1 at 13, 19.)[10]  Petitioner contends that Appellate Counsel's failure to raise this ground was prejudicial because "there is a strong probability that the [Third Circuit] would have overturned his conviction based on the chainless custody alone." (Id. at 20.)  He claims that Appellate Counsel, at trial, developed a record that supports the inadmissibility of the cell phone, but that on appeal, Appellate Counsel abandoned the claim.  (Id. at 21.)

In response, the Government maintains that, as to Ground Four, this Court properly allowed the cell phone and the extracted photographs of Petitioner individually and with Codefendant Hernandez[11] into evidence.  (Doc. No. 1818 at 16.)  The Government argues that "[e]ven if there was a weakness in the links [of the chain of custody]," the photographs are not physical objects and must only be authenticated before being admitted into evidence.  (Id. at 17.)  Further, the Government asserts that there is no evidence that the photographs were manipulated and that Petitioner cannot establish prejudice..  (Id. at 17–18.)

As to the first prong of Strickland, Appellate Counsel, like Trial Counsel, is given a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  See Strickland, 466 U.S. at 688.  "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons

---

[10]   The Court need not address the second Strickland prong as to Ground Four.  See Gaines, 33 F.4th at 712 (noting that if a § 2255 movant "makes an inadequate showing as to one of the[] [Strickland prongs], then [courts] do not need to examine the other").

[11]   The photos are referred to as Government Exhibits 136.5.1, 136.5.3, 136.5.4, 136.5., and 136.5.6.  See (Doc. No. 997 at 50–52, Tr. 4404:17–4406:16).

rather than through sheer neglect." Yarborough v. Gentry, 540 U.S. 1, 8 (2003)

(citing Strickland, 466 U.S. at 690).  Although a defendant decides whether to pursue an appeal,

"the choice of what specific arguments to make within that appeal belongs to appellate counsel."

See Garza v. Idaho, 586 U.S. 232, 240 (2019).  A defendant has no constitutional right to compel

counsel to "press nonfrivolous points" if counsel, "as a matter of professional judgment, decides

not to present those points."  See Jones v. Barnes, 463 U.S. 745, 751 (1983).

There is no evidence to demonstrate that the Court's decision was in error.  Moreover,

because appellate courts generally defer to the district court when resolving a chain of custody

dispute, even had Appellate Counsel had made the argument, Petitioner has not established given

the nature of the evidence, that the Third Circuit would have agreed with Petitioner's assessment

of the ruling.  See United States v. Rawlins, 606 F.3d 73, 85 (3d Cir. 2010) (quoting United

States v. Jackson, 649 F.2d 967, 973 (3d Cir. 1981)) (stating that the Third Circuit gives

deference to the district court "in resolving disputes of this nature," and that the Third Circuit

"cannot overturn its conclusion as to the sufficiency of the chain of custody absent a 'clear abuse

of discretion'").  Appellate Counsel "cannot be deemed ineffective for failing to raise a meritless

claim."  See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000).  Accordingly, the Court will

deny Petitioner's claim as to Ground Four.

As to Grounds Five and Six, the Court need not consider the first Strickland prong as to

the reasonableness of Trial Counsel's performance because Grounds Five and Six can be

disposed of due to lack of prejudice.  See Gaines, 33 F.4th at 712 (noting that if a § 2255 movant

"makes an inadequate showing as to one of the[] [Strickland prongs], then [courts] do not need to

examine the other").  To satisfy the prejudice prong of Strickland for an alleged failure to

investigate, Petitioner "must establish a reasonable probability—one sufficient to undermine our

confidence in the outcome—that the jury's verdict would have been different if not for counsel's errors," and that "[s]uch a showing may not be based on mere speculation about what the witnesses [the attorney] failed to locate might have said." See United States v. Tolliver, 800 F.3d 138, 142 n.3 (3d Cir. 2015) (quoting United States v. Gray, 878 F.2d 702, 712 (3d Cir.1989) (internal citations omitted)).

As to Grounds Five and Six, Petitioner claims that Trial Counsel was ineffective by failing to hire or move this Court to appoint an independent digital forensic expert to examine the cell phone and failing to "demand production of the digital forensic expert's 'generate report'" to prove the cell phone was "manipulated by the ATF after its seizure to include inculpatory evidence against him." (Doc. No. 1759-1 at 22, 25.)[12]   In response, the Government contends that Petitioner has offered no affidavits or other evidence to suggest that there is exculpatory evidence to support such claims, characterizing them as just broad speculation. (Doc. No. 1818 at 22.)[13]

Petitioner fails to show that an investigation by Trial Counsel would have shown that Petitioner's cellphone was manipulated. Petitioner claim, without any factual basis, that the cell phone was manipulated, even though Petitioner's apartment was searched, the phone was recovered, the phone was photographed where it was recovered, the phone was put into evidence, data was extracted from the phone, an extraction report was created, and the phone was

---

[12]  The Court notes that Trial Counsel objected to the phone, the custody of the phone, and the extraction of data from the phone, as well as cross-examined witnesses regarding the recovery of the phone. See, e.g., (Doc. No. 976 at 552–55, Tr. 552:3–555:18).

[13]  In its briefing, the Government discusses Grounds Five, Six, Eight, Nine, Ten, Eleven, and Twelve under the general umbrella of "Investigation." See (Doc. No. 1818 at 19). The Court already discussed Ground Nine supra. The Court addresses Grounds Five and Six with Ground Four because they concern the cell phone data. The Court addresses the remaining "Investigation" Grounds—Eight, Ten, Eleven, and Twelve—together infra.

admitted into evidence.  Further, the phone's account name, as noted by the Government (Doc. No. 1818 at 16), included Petitioner's first and last name, and the photos on the cell phone were of Petitioner and of Petitioner with Codefendant Hernandez.  See (Doc. No. 997 at 48–52, Tr. 4402:14–4406:16).  Further, Petitioner puts forth no evidence establishing a reasonable probability that additional investigation into the cell phone and its chain of custody would have changed the outcome of his trial.  See Tolliver, 800 F.3d at 142 n.3.  Accordingly, Petitioner fails to demonstrate that he was prejudiced by Trial Counsel's alleged failure to investigate as to Grounds Five and Six.

Because Petitioner has failed to demonstrate that Trial Counsel was ineffective at trial and on appeal as it relates to Petitioner's cell phone, the Court will deny Petitioner's motion as to Grounds Four, Five, and Six.

### E.    Ground Seven: Trial Counsel's Failure to Challenge the Sufficiency of Christen Latham Evidence

Ground Seven of Petitioner's § 2255 motion concerns evidence relating to the murder of Christen Latham.  Petitioner claims that his Trial Counsel was ineffective for failing to seek a Rule 29 motion and, if necessary, appeal an adverse ruling on the sufficiency of evidence relating to the murder of Christen Latham.  However, the Government responds that Petitioner's claim is without merit because Petitioner was not charged with the murder of Latham and the murder was just one event of many in the RICO conspiracy that Petitioner participated in.  (Doc. No. 1818 at 18.)  The Government cites to the Third Circuit's decision in Williams, in which the Third Circuit stated that:

> [B]oth RICO and drug-trafficking conspiracy are ultimately grounded in the general principles of conspiracy law.  The Latham evidence implicates several of the Defendants and goes to their willingness to engage in concerted illegal action, amounting at its most serious to murder.  The argument that the evidence has nothing to do with drug trafficking and the South Side-Parkway rivalry is therefore

inapposite.  Conspiracy is a single crime, even if it embraces a multitude of ends to be achieved over a period of time, by means that are not themselves the subject of agreement among the conspirators.

See Williams, 974 F.3d at 357.

Upon consideration of the parties' arguments, the record, and the applicable law, the Court concludes that Ground Seven fails for the same reason as Petitioner's previous grounds—lack of prejudice.  The Court need not address the first Strickland prong.  See Gaines, 33 F.4th at 712 (noting that if a § 2255 movant "makes an inadequate showing as to one of the[] [Strickland prongs], then [courts] do not need to examine the other").  Petitioner has not shown that he suffered any prejudice because as evidenced by the decision in Williams, although the evidence concerning Latham's murder implicated Petitioner and other Codefendants in the underlying conspiracy, Petitioner was not charged with Latham's murder.  Therefore, the Court will deny Petitioner's § 2255 motion as to Ground Seven.

**F.    Grounds Eight, Ten, Eleven, and Twelve: Trial Counsel's Failure to Investigate[14]**

Grounds Eight, Ten, Eleven, and Twelve all generally allege that, if Trial Counsel conducted additional investigation, exculpatory evidence may have been discovered.[15]  Although

---

[14]  See supra at note 12.

[15]  As noted supra, these grounds are as follows:

(8)    Trial Counsel was ineffective because he "failed to move for a latent fingerprint expert and a DNA expert to examine the four .45 caliber spent shell casings and two .45 caliber cartridges collected at the crime scene of Christ[ian] Latham murder";

(10)    Trial Counsel was ineffective because he "failed to have Darrell Williams' 9mm firearm examined by a firearm expert to ascertain if the firearm was sabotaged by Williams to cause the ejector mechanism to purposely jam with a stuck spent shell casing";

Petitioner maintains that there was potential exculpatory evidence that Trial Counsel failed to investigate (Doc. No. 1759-1 at 3 –32, 34–40), the Government counters that Petitioner provides no affidavits or other evidence to suggest that he was prejudiced by these alleged failures or that such investigations would have "uncovered evidence sufficient to undermine confidence in the verdicts," (Doc. No. 1818 at 19–21).

The Court agrees with the Government and concludes that Petitioner has failed to establish ineffective assistance of counsel as to Grounds Eight, Ten, Eleven, and Twelve because Petitioner fails to establish prejudice.  The Court need not address the first Strickland prong.  See Gaines, 33 F.4th at 712 (noting that if a § 2255 movant "makes an inadequate showing as to one of the[] [Strickland prongs], then [courts] do not need to examine the other").  To satisfy the prejudice prong of Strickland for an alleged failure to investigate, Petitioner "must establish a reasonable probability—one sufficient to undermine our confidence in the outcome—that the jury's verdict would have been different if not for counsel's errors," and that "[s]uch a showing may not be based on mere speculation about what the witnesses [the attorney] failed to locate might have said."  See Tolliver, 800 F.3d at 142 n.3 (quoting Gray, 878 F.2d at 712 (internal citations omitted)).

Grounds Eight and Ten concern the gun, spent shell casings, and cartridges at the scene of Christen Latham's murder.  (Doc. No. 1759-1 at 31–32, 34–36.)  As to Ground Eight,

---

(11)     Trial Counsel was ineffective because he "failed to interview or send a private investigator to interview Cheirha Rankins and Christine Media who observed a man with a firearm at the crime scene'";

(12)     Trial Counsel was ineffective because he "failed to locate and interview crucial witnesses who were positioned in close proximity to the area where Christ[ian] Latham died from a gunshot wound to his chest";

See (Doc. No. 1759-1).

Petitioner argues that his Trial Counsel failed to "move for a latent fingerprint expert and a DNA expert to examine the four .45 caliber spent shell casings and two .45 caliber cartridges collected" at the scene of the murder. (Id. at 31.) As to Ground Ten, Petitioner claims that his Trial Counsel failed to have Darrell Williams' firearm examined to "ascertain if the firearm was sabotaged by Williams to cause the ejector mechanism to purposely jam with a stuck spent shell casing," and that such evidence would have shown that Williams' story was "bogus" and that he was responsible for Latham's murder. (Id. at 34–36.)[16] Grounds Eleven and Twelve concern witnesses that Petitioner claims that Trial Counsel should have interviewed or investigated. As to Ground Eleven, Petitioner identifies Cheirha Rankins and Christine Medina who observed a man with a firearm at the scene of Latham's murder. (Doc. No. 1759-1 at 36–38.) Petitioner bases his argument as to Ground Twelve on individuals relating to Darrell Williams' testimony regarding the murder:

A.    Oscar Sease who was Williams' cousin;
B.    The female who initially gave CPR assistance to Latham;
C.    Williams' female friend who sat in his truck with him; and
D.    That female's friends whose vehicle was parked beside Williams' truck.

See (id. at 39–40).

As to Grounds Eight and Ten, Petitioner fails to show that additional investigation by Trial Counsel would have recovered potentially exculpatory evidence. As to the shell casings

---

[16] By way of background, Darrell Williams testified at trial that his gun accidentally discharged at the scene of the murder and that he did not initially tell the police the truth concerning his gun. (Doc. No. 988 at 115–20, 129–44, Tr. 3036:7–3041:22, Tr. 3050:23–3065:18.) However, another witness, Garry Herndon, testified that he saw Darrell Williams discharge a firearm into the air disperse a crowd. (Id. at 89–102, Tr. 3010:7–3023:21.) Petitioner's Trial Counsel cross-examined Darrell Williams on the inconsistencies in his story. See (id. at 135–39, 3056:17–3060:24). The Court also notes that Darrell Williams testified that he voluntarily gave his gun to the police after the shooting. (Id. at 120, Tr. 3041:4–22.) Additionally, eight (8) witnesses over two days gave testimony related to Latham's murder. See generally (Doc. Nos. 988–89).

and cartridges at the scene, Officer Gregory Schick—the evidence technician at the scene—provided testimony regarding these items and Petitioner's counsel cross-examined him about the lack of DNA and fingerprint evidence on these items.  (Doc. No. 989 at 93–112, Tr. 3162:4 - 3181:3.)  Petitioner puts forth no evidence establishing a reasonable probability that additional investigation into the casings and cartridges would have changed the outcome of his trial.  See Tolliver, 800 F.3d at 142 n.3.

As to Grounds Eleven and Twelve, Petitioner provides no affidavits from these potential witnesses and cannot identify the names of the majority of them.  Accordingly, he cannot show that their testimony establishes a reasonable probability that, if offered, it would have changed the outcome of his trial.  See id.

Therefore, Petitioner fails to demonstrate that the result of the trial would have been different but for his Trial Counsel's failure to investigate the evidence identified in Grounds Eight, Ten, Eleven, and Twelve.  Because Petitioner's claims amount to nothing more than speculation, the Court will deny Petitioner's § 2255 motion as to Grounds Eight, Ten, Eleven, and Twelve.

### G.    Grounds Thirteen and Fourteen: Petitioner's Sentence

The final two grounds of Petitioner's § 2255 motion maintain that this Court erred in the calculation of his sentence.  As to Ground Thirteen, Petitioner claims that this Court incorrectly sentenced him based on an aggregated quantity of drugs and that this gave rise to a Rowe error.  (Doc. No. 1759-1 at 41.)[17]  As to Ground Fourteen, Petitioner claims that this Court erred in

---

[17]  Petitioner also claims that "in the alternative, [Appellate Counsel] provided [Petitioner] with ineffective assistance of counsel on direct appeal when [Appellate Counsel] failed to recall the mandate in order to have the Third Circuit make an adjudication on the Rowe argument [Petitioner] adopted from his [C]odefendant."  (Doc. No. 1759-1 at 41.)  The Court finds that this

applying a leadership enhancement to his sentencing guideline calculation under U.S.S.G. §

3B1.1(a) because the activities must be proven to the jury.  (Id. at 42.)

The Government's brief does not address Ground Thirteen.  See generally (Doc. No.

1818).  As to Ground Fourteen, the Government argues that Petitioner's sentence was affirmed

by the Third Circuit and is thus the law of the case.  See (Doc. No. 1818 at 22) (citing In re City

of Phila. Litig., 158 F.3d 711, 718 (3d Cir. 1998)).  The Government also contends that collateral

review does not provide an avenue for relief for a guideline calculation error.  See (id. at 23)

(citing United States v. Folk, 954 F.3d 597, 602 (3d Cir. 2020)).

Having considered Petitioner's arguments, the briefing of the parties, and the record of

these criminal proceedings, the Court concludes that Grounds Thirteen and Fourteen fail because

(1) the arguments have been rejected by the Third Circuit and moreover (2) do not constitute

cognizable claims on collateral review.  As to Ground Thirteen, the Third Circuit held that

multiple transactions over a period of time should not be aggregated to determine the drug

weight for a substantive drug trafficking offense.  See Williams, 974 F.3d at 365 (relying on

United States v. Rowe, 919 F.3d 752, 759–60 (2019)).   In the context of drug-trafficking

conspiracy charges brought pursuant to 21 U.S.C. § 846 where "drug quantities are charged

pursuant to [21 U.S.C.] § 841(b)(1)(c)," the "statutory maximum term of imprisonment is to be

determined according to the amount of drugs involved in the conspiracy as a whole," whereas the

mandatory minimum term is "determined only according to the aggregate quantity of drugs

involved in those violations of § 841(a) that were within the scope of the conspiracy, or in

furtherance of it, and were reasonably foreseeable to the defendant as a natural consequence of

---

alternative claim lacks merit because the Third Circuit made a clear adjudication concerning the
Rowe error and the lack of prejudice that resulted, as discussed infra.

his unlawful agreement." See Williams, 974 F.3d at 372. The Third Circuit concluded that "[t]here was sufficient evidence upon which a rational juror could have concluded that these six Defendants [including Petitioner] were guilty under § 846 and were responsible for 280 grams or more of crack" and because of that conclusion, "the Rowe error on Count III did not affect their substantial rights" because "[t]heir statutory maximum terms of imprisonment would have been life even if the Rowe error had not occurred." See id. at 373–74. The Third Circuit found that the Defendants failed to establish that "there is 'a reasonable probability that, but for the error claimed,' the Defendants' terms of imprisonment would have been different." See Williams, 974 F.3d at 367 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 82 (2004)).

As to Ground Fourteen, the Court applied a four-level increase to Petitioner's calculation due to his leadership role. (Doc. Nos. 1400 at 2–11, 26, Tr. 2:11–11:7, 26:19–23; 1401 at 1–2.) However, even with the enhancement, Petitioner's score stayed the same because a score of 43 is the highest allowed, meaning that his guideline range was unchanged with the enhancement. (Doc. No. 1400 at 11, Tr. 11:3–6; 1401 at 1–2.) Further, the Third Circuit affirmed this Court's application of the enhancement on direct appeal:

> Organizer or leader increase. [Petitioner] contends that the District Court erred in applying a four-level increase for being "an organizer or leader of a criminal activity that involved five or more participants." U.S.S.G. § 3B1.1(a). When determining whether to apply this enhancement, a court should consider, among other things, "the nature of participation in the commission of the offense, ... the degree of participation in planning or organizing the offense, [and] the nature and scope of the illegal activity." U.S.S.G. § 3B1.1 cmt. n.4. As just noted, the evidence indicated that [Petitioner] supplied a substantial amount of crack to the younger generation of street-level dealers, associated with other key suppliers such as Cruz and Hernandez, and helped to introduce guns into the South Side-Parkway rivalry. In this light, we cannot say the District Court clearly erred in imposing the enhancement.

See Williams, 974 F.4th at 376.

The Third Circuit's consideration of these issues provides a basis to reject Grounds

Thirteen and Fourteen because it is settled law that "issues resolved in a prior direct appeal will not be reviewed again by way of a § 2255 motion . . . ."  See United States v. Travillion, 759 F.3d 281, 288 (3d Cir. 2014).  This rule embodies the "law-of-the-case doctrine, which provides that 'when a court decides upon a rule of law, the decision should continue to govern the same issues in subsequent stages in the same case.'"  See United States v. Thomas, 750 F. App'x 120, 124 (3d Cir. 2018) (unpublished) (quoting Farina v. Nokia Inc., 625 F.3d 97. 117 n.21 (3d Cir. 2010)) (citing United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993)).

Second, assuming arguendo that the law of the case does not prevent reconsideration of these issues, the Court concludes that, under applicable Third Circuit precedent, Petitioner's claims under Grounds Thirteen and Fourteen are not cognizable in connection with a § 2255 motion.  A § 2255 motion does not provide an avenue for relief from sentencing guideline errors, except under two circumstances.  See Folk, 954 F.3d at 602.  The first is where the sentencing error results in "an omission inconsistent with the rudimentary demands of fair procedure."  See Folk, 954 F.3d at 602 (quoting United States v. Timmreck, 441 U.S. 780, 783 (1979)).  The second is where the sentencing error is a "fundamental defect that inherently results in a complete miscarriage of justice."  See id. at 604.  However, "an incorrect guideline calculation does not constitute 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  See Nixon v. United States, No. 17-cv-00563, 2020 WL 4194130, at *5 (W.D. Pa. July 21, 2020) (quoting Folk, 954 F.3d at 604).  Accordingly, for these two reasons, Petitioner's sentencing challenges fail and the Court will deny Petitioner's final two grounds for relief.

### H.    Evidentiary Hearing

Section 2255(b) advises that a petitioner may be entitled to a hearing on his motion.  The decision to hold a hearing is wholly within the discretion of the district court.  See Gov't of V.I.

v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).  If "the files and records of the case conclusively show

that the prisoner is entitled to no relief," the Court need not hold a hearing.  See 28 U.S.C.

§ 2255(b).  In determining whether a hearing must be held regarding claims of ineffective

assistance of counsel, the Court must first "accept as true the nonfrivolous allegations in the

petition" and then "determine whether, on the existing record, those claims that are nonfrivolous

conclusively fail to show ineffective assistance of counsel."  See United States v. Dawson, 857

F.2d 923, 927–28 (3d Cir. 1988); see also United States v. Arrington, 13 F.4th 331, 334 (3d Cir.

2021) (applying the standard as set forth in Dawson).  Assuming the truth of Petitioner's

nonfrivolous allegations but not of the conclusory and speculative ones, the Court finds that he

has conclusively failed to establish ineffective assistance of counsel as to any of his grounds for

relief.  Petitioner's sentencing guideline challenges are barred by the law of the case and, further,

not cognizable in connection with a § 2255 motion. Accordingly, the Court finds no reason to

hold an evidentiary hearing in this matter.

## I.    Certificate of Appealability

In proceedings brought under § 2255, a petitioner cannot appeal to the circuit court unless

a certificate of appealability ("COA") has been issued.  A court may not issue a COA unless "the

applicant has made a substantial showing of the denial of a constitutional right."  See 28 U.S.C.

§ 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could

disagree with the district court's resolution of his constitutional claims or that jurists could

conclude the issues presented are adequate to deserve encouragement to proceed further."

Miller-El v. Cockrell, 537 U.S. 322 (2003).  Here, the Court concludes that jurists of reason

would not find the disposition of this case debatable, and the Court will not issue a COA.

**IV.    CONCLUSION**

For the foregoing reasons, the Court will deny Petitioner's § 2255 motion (Doc. No.

1759) without an evidentiary hearing and will not issue a COA.  An appropriate Order follows.

 s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania